**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| BENJAMIN KINNEY, | Case No.: |
| *Plaintiff-Applicant*, | |
| v. | |
| AT&T MOBILITY, LLC, | |
| *Defendant-Respondent*. | |

## APPLICATION TO VACATE OR MODIFY ARBITRATION AWARD

Plaintiff-Applicant Benjamin Kinney respectfully requests that this Court vacate under 9 U.S.C. § 10, or modify under 9 U.S.C. § 11, an award entered in an arbitration between Mr. Kinney and Defendant-Respondent AT&T Mobility, LLC. In support of this application, Mr. Kinney states as follows:

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), as the parties are of diverse citizenship and the amount in controversy exceeds $75,000. Benjamin Kinney is a natural person and citizen of the State of Illinois. AT&T Mobility, LLC ("AT&T") is an LLC with three members:

    (1)     BellSouth Mobile Data, Inc., a Georgia corporation with its principal place of business in Georgia;

    (2)     SBC Long Distance, LLC, an LLC whose sole member is SBC Telecom, Inc., a Delaware corporation with its principal place of business in Texas; and

    (3)     SBC Tower Holdings, LLC, an LLC with four members:

(a)     SBC Telecom, Inc., which, as noted above, is a Delaware corporation with

its principal place of business in Texas;

(b)     AT&T Capital Services, Inc., a Delaware corporation with its principal

place of business in Texas;

(c)     SBC Portfolio Holdings, Ltd., a Delaware corporation with its principal

place of business in Texas; and

(d)     JVI General Partnership, which consists of two partners:

(i)     AT&T Corp., a New York Corporation with its principal place of

business in Texas; and

(ii)    AT&T Solutions, Inc., a Delaware Corporation with its principal

place of business in New Jersey.

Venue is proper under 9 U.S.C. §§ 10 and 11 because the arbitration award was made in

this District.

## BACKGROUND

Mr. Kinney obtained cell phone service from AT&T. That relationship is governed by a

Wireless Customer Agreement (the "Agreement"), which contains a forced arbitration clause.[1]

At some point after Mr. Kinney first signed up for AT&T wireless service, AT&T began placing

unauthorized charges on his bill and debiting his bank account for various "insurance" products

that he never requested or purchased.

In February 2017, pursuant to the arbitration clause, Mr. Kinney submitted a notice of

dispute to AT&T regarding the unauthorized charges and debits.[2] He asserted common law

claims for breach of contract, unjust enrichment, and fraud, as well as statutory claims under the

---

[1]     A copy of the Agreement is attached hereto as Exhibit A.
[2]     A copy of the Notice of Dispute is attached hereto as Exhibit B.

2

Illinois Consumer Fraud and Abuse Act, 815 ILCS 505/1 *et seq.*, and the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* He sought actual damages in the amount $170.84 (later raised to $420.26 following discovery), and statutory damages of $1,000 per violation. He also sought punitive damages, attorneys' fees, and injunctive relief.

In response to Mr. Kinney's notice of dispute, AT&T asserted that Mr. Kinney's claims were unfounded. It did, however, credit Mr. Kinney's account $205. The credit was not conditioned on Mr. Kinney's dropping his dispute or releasing any claims against AT&T, or on AT&T's receiving any other consideration from Mr. Kinney. Rather, it was, as AT&T explained, "a gesture of goodwill and token of appreciation of Mr. Kinney's status as a long-time AT&T customer." (AT&T Resp. Notice Dispute at 2.)[3]

Because the $205 credit did not provide full relief to Mr. Kinney, he continued with arbitration. The arbitration was conducted under the auspices of the American Arbitration Association, and was assigned to Arbitrator James C. Munson.

Throughout the course of the arbitration, both in pleadings submitted to Arbitrator Munson and in hearings before him, AT&T referenced the $205 credit. For example, AT&T moved to dismiss Mr. Kinney's claims in arbitration, arguing, among other things, that the $205 credit exceeded Mr. Kinney's actual damages. (Letter Br. Supp. Mot. Dism. at 2-3.)[4] Likewise, at the arbitration hearing, AT&T again argued that Mr. Kinney could not win because the $205 credit exceeded any alleged overcharges. (Tr. at 32:1-22.)[5]

The Agreement expressly states that "[d]uring the arbitration, the amount of any settlement offer made by AT&T or [the customer] shall not be disclosed to the arbitrator until

---

[3]     A copy of AT&T's Response to the Notice of Dispute is attached hereto as Exhibit C.
[4]     A copy of AT&T's Letter Brief in Support of Motion to Dismiss Mr. Kinney's arbitration demand is attached hereto as Exhibit D.
[5]     A copy of the arbitration hearing transcript is attached hereto as Exhibit E.

after the arbitrator determines the amount, if any, to which [the customer] or AT&T is entitled."
(Agreement § 2.2(2).) As Arbitrator Munson expressly recognized, "the parties to the arbitration
agreement plainly don't want the arbitrator to hear about settlement negotiations because that
might influence the arbitrator's view of the merits of the case." (Tr. at 40:21-41:1.)

By repeatedly raising the $205 credit to the arbitrator, AT&T implicitly represented that
the credit was not a settlement offer, because if it were an offer, AT&T's raising it would violate
the Agreement. And on at least one occasion, AT&T made the representation explicit: At the
arbitration hearing, counsel for AT&T stated that "[w]ith respect to the $205 credit, it's true that
the wireless customer agreement arbitration clause talks about not disclosing settlement offers,
but it was not an offer in acceptance." (Tr. at 38:9-13.) As discussed below, this view that the
$205 credit was not an offer is consistent with Illinois law.

After the hearing, the arbitrator issued an "Award of Arbitrator" on January 31, 2018 (the
"January Award") finding that Mr. Kinney was entitled to $43.96 for AT&T placing
unauthorized charges on his bill.[6] The arbitrator also held that the $205 credit did not moot Mr.
Kinney's claims because that amount did not fully satisfy his request for relief.

The Agreement included a provision stating that if the arbitrator issued an award to the
customer greater than AT&T's last written settlement offer—or if AT&T failed to make a
settlement offer—AT&T would pay the customer $10,000 (the "Alternative Payment") and twice
the customer's reasonable attorneys' fees (the "Attorney Premium"). (Agreement § 2.2(4).)
Pursuant to this provision, Mr. Kinney requested that the arbitrator award him the $10,000
Alternative Payment and $417,728.75 (representing two times the amount of fees incurred) for

---

[6]     A copy of the January Award is attached hereto as Exhibit F.

the Attorney Premium because he had obtained some relief through the January Award and AT&T had made no written settlement offer.

In response, AT&T asserted—despite its implicit and explicit representations throughout the arbitration to the contrary—that the $205 credit was a settlement offer. And, argued AT&T, because the $205 credit was greater than the $43.96 awarded by the arbitrator, the Alternative Payment and Attorney Premium provisions did not apply.

On March 20, 2018, the arbitrator entered an order holding that the $205 credit was a settlement offer, and denying Mr. Kinney's request for the Alternative Payment and Attorney Premium (the "March Award").[7]

## ARGUMENT

Mr. Kinney moves, under the Federal Arbitration Act, to vacate or modify the March Award on three grounds: (1) that it was procured by fraud or undue means, (2) that the arbitrator exceeded his powers by disregarding Illinois law in determining that Mr. Kinney was not entitled to the Alternative Payment and Attorney Premium, and (3) that the award is based on an evident miscalculation of figures.

## I.    9 U.S.C. § 10(a)(1): AT&T PROCURED THE AWARD BY FRAUD OR UNDUE MEANS.

An arbitration award can be vacated where it was "procured by … fraud … or undue means." 9 U.S.C. § 10(a)(1). "'[U]ndue means' requires some type of bad faith in the procurement of the award." *Fitigues, Inc. v. Varat Enters., Inc.*, No. 91 C 4894, 1992 WL 245553, at *5 (N.D. Ill. Sept. 18, 1992) (internal quotations omitted) *aff'd sub nom Fitigues, Inc. v. Varat*, 2 F.3d 1153 (7th Cir. 1993); *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104, 108-09 (N.D. Ill. 1980) (same), *aff'd* 653 F.2d 310 (7th Cir. 1981). Here, AT&T procured the

---

[7]    A copy of the March Award is attached hereto as Exhibit G.

March award by fraud or undue means by making inconsistent and contradictory representations about the $205 credit at various times in the arbitral proceedings to suit its needs.

The March Award denied Mr. Kinney's request to apply the $10,000 Alternative Payment and Attorney Premium provisions of the Agreement. These provisions are one of the key features to which AT&T points when it tries to sell to the public—including the Supreme Court and Congress—that its arbitration agreement is fair and consumer-friendly, because these provisions supposedly make it feasible for consumers to pursue low-dollar claims individually. *See, e.g.,* Brief for Petitioner, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (No. 09-893), 2010 WL 3017755; Letter from Timothy P. McKone, AT&T Exec. Vice President Fed. Relations, to the Hon. Al Franken, the Hon. Richard Blumenthal, the Hon. Ron Wyden, the Hon. Patrick Leahy, and the Hon. Edward J. Markey, United States Senators (June 30, 2017).[8] But as this case illustrates, when a consumer like Mr. Kinney actually seeks to enforce those provisions, AT&T will engage in bad-faith conduct to avoid them.[9]

When Mr. Kinney asked the arbitrator to award him the Alternative Payment and Attorney Premium because he had successfully obtained recovery from AT&T and AT&T had made no written settlement offer, AT&T responded by arguing that the $205 credit was a settlement offer that exceeded his recovery, making the provisions inapplicable. But this was in direct contradiction to AT&T's earlier representations to the arbitrator that the $205 credit was *not* a settlement offer. AT&T had represented to the arbitrator—both implicitly and explicitly— that the $205 credit was not a settlement offer so that it could present the credit as evidence

---

[8]    A copy of AT&T's letter to the Senate is attached hereto as Exhibit H.

[9]    In its letter to the five Senators, AT&T asserted that the Alternative Payment and Attorney Premium provisions encourage it to amicably resolve "all but the most meritless claims" before arbitration. (Letter at 6-7.) As evidenced by the January Award, however, Mr. Kinney's claims were far from meritless.

regarding Mr. Kinney's damages. And AT&T's presentation of the $205 credit was arguably successful, because Mr. Kinney did not recover in the January Award all the damages he claimed.

Yet despite representing that the $205 credit was not a settlement offer so as not to be in violation of the Agreement's provision that settlement offers could not be disclosed to the arbitrator, AT&T quickly changed its tune when Mr. Kinney sought the Alternative Payment and Attorney Premium. In arguing that the January Award did not entitle Mr. Kinney to the Alternative Payment and Attorney Premium, AT&T represented to the arbitrator that the $205 credit *was* a settlement offer. Treating the $205 credit as not a settlement offer in order to have it admitted as evidence during the arbitration, and then arguing to the arbitrator that it *was* a settlement offer in order to procure the March Award was, at best, in bad faith, and at worst, fraud. Either way, AT&T's misconduct is grounds for vacating the March Award.

## II.    9 U.S.C. § 10(a)(4): THE ARBITRATOR EXCEEDED HIS POWERS.

The March Award should also be vacated under 9 U.S.C. § 10(a)(4) because the arbitrator "exceeded [his] powers" by disregarding Illinois law when determining that the $205 credit was a settlement offer that precluded application of the Alternative Payment and Attorney Premium provisions.

The parties agreed that the Agreement (including the Alternative Payment and Attorney Premium provisions) would be governed by Illinois law. (Agreement § 10.3.2.)[10] The parties further agreed that the arbitrator was bound by the terms of the Agreement, including the choice of law clause. (Agreement § 2.2(3)) ("The arbitrator is bound by the terms of this Agreement.").

_____

[10]    The Agreement's choice of law clause selects the law of the state of the customer's billing address, which in Mr. Kinney's case is Illinois.

Thus, the Arbitrator was bound to apply Illinois law in determining whether the $205 credit was a settlement offer. He did not.

Under Illinois law, "an offer is an act on the part of one person giving another person the legal power of creating the obligation called a contract." *La Salle Nat'l Bank v. Vega*, 520 N.E.2d 1129, 1133 (Ill. App. Ct. 1988). An offer is thus a promise conditioned on acceptance by—and consideration from—the offeree. *See Calo, Inc. v. AMF Pinspotters, Inc.*, 176 N.E.2d 1, 5 (Ill. App. Ct. 1961) ("An offer is always a conditional promise[.]"). Here, the $205 credit was not conditioned on Mr. Kinney relinquishing his claims. Indeed, it was not conditioned on *anything*. AT&T unilaterally credited $205 to Mr. Kinney's wireless account, and, in notifying him of it, described it as "a gesture of goodwill and token of appreciation of [his] status as a long-time AT&T customer." (AT&T Resp. Notice Dispute at 2.) It was a voluntary, gratuitous transfer—in other words, a gift. *See In re Marriage of Brill*, 87 N.E.3d 302, 313 (Ill. App. Ct. 2017) ("A 'gift' is defined as a voluntary, gratuitous transfer of property by one to another[.]") (internal quotations omitted). Because the $205 credit was not conditional on either Mr. Kinney's acceptance of it or consideration given by him in exchange for it, it was not, as a matter of Illinois law, an offer. *See La Salle Nat'l Bank*, 520 N.E.2d at 1133 ("Where the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer.") (internal quotations omitted).

The arbitrator's ruling that the $205 credit was an offer was thus contrary to Illinois law. But the arbitrator didn't simply make a mistake of Illinois law (which would not be a ground to vacate the award), he failed to apply it at all (which *is* a ground for vacatur). The Seventh Circuit has drawn a distinction "between two types of case in which an arbitral award might be challenged for disregarding the law." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554-55

(7th Cir. 2002). In one type, "the arbitrators conscientiously attempt to apply Illinois law, pursuant to the choice of law provision in the contract, but fail to apply it correctly." *Id*. In that case, "[t]he loser has no judicial remedy… because it is merely a case of legal error, not of *ultra vires*." *Id*. *See also Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 567-68 (7th Cir. 2015) ("Simple mistake of law is not enough."). In the other type, however, "although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide that they don't like that state's law, they like another state's law better and so they will apply that state's law." *BEM I*, 301 F.3d at 554. "That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award." *Id*. (citing 9 U.S.C. § 10(a)(4)).

Here, we have the latter situation. Arbitrator Munson didn't apply Illinois law and get it wrong; he didn't even *try* to apply Illinois law. Rather than apply Illinois law, he determined that the $205 credit was an offer "as a matter of reason and common sense." (March Award at 2.) But by ignoring the law chosen by the parties to govern their contract (and arbitration of any disputes arising under that contract), and instead applying his own notions of reason and common sense, the arbitrator exceeded his powers. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 673-77 (2010) (holding that arbitration panel "imposed its own policy choice and thus exceeded its powers" where, rather than applying governing law, "the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied"); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[I]f the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—… a court [may] overturn his determination.") (internal quotations and alterations omitted); *BEM I,*

*L.L.C. v. Anthroplogie, Inc.*, No. 98 C 358, 2001 WL 197057, at *5 (N.D. Ill. Feb. 27, 2001) ("[T]he [arbitration] Panel exceeded its powers by disregarding the contract and implementing its own notion of what is reasonable and fair.") (internal quotations and alterations omitted) *aff'd* 301 F.3d 548 (7th Cir. 2002). As the Seventh Circuit has explained, "[i]f the parties specify that their dispute is to be resolved under Wisconsin law, then an arbitrator's declaration that he prefers … no law at all … would violate the terms on which the dispute was given to him for resolution, and thus justify relief under § 10(a)(4)." *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001). *See also Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) ("[B]ecause arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given them. If they tell him to apply Wisconsin law, he cannot apply New York law.").

By refusing to apply the law selected by the parties, Arbitrator Munson exceeded the power granted to him by the arbitration agreement, and the March Award must therefore be vacated.

## III.  9 U.S.C. § 11(a): THE AWARD IS BASED ON AN EVIDENT MISCALCULATION OF FIGURES.

Finally, in the event the March Award is not vacated, it should be modified under 9 U.S.C. § 11(a) because "there was an evident material miscalculation of figures." "An evident material miscalculation occurs where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award." *Nat'l Educ. Corp. v. Martin*, No. 93 C 6247, 1995 WL 622267, at *6 (N.D. Ill. Oct. 20, 1995). Here, such a mistake occurred.

Even assuming that the $205 credit was a settlement offer, Mr. Kinney would still be entitled to the Alternative Payment and Attorney Premium if "the arbitrator issue[d] [him] an

10

award that [was] greater than" $205. (Agreement § 2.2(4).) In denying Mr. Kinney's request for the Alternative Payment and Attorney Premium, the arbitrator in the March Award stated that "since the [January] [A]ward was for $43.96 the settlement offer of $205.00 plainly exceeded the award." (March Award at 2.) Valuing the January Award at $43.96, however, was an evident and material miscalculation.

In the January Award, Arbitrator Munson ruled that the $205 credit "did not satisfy the entire amount claimed that included statutory, punitive and compensatory damages as well as attorneys' fees and costs." (January Award at 2.) Thus, the *additional* $43.96 to which the arbitrator found Mr. Kinney was entitled to *on top of* the $205 credit AT&T had already provided to him in response to his notice of dispute. Indeed, AT&T recognizes that it provided Mr. Kinney a total of $248.96 as a result of the arbitrator's ruling. (Letter from William A. Wright, Counsel for AT&T, to Ari Scharg, Counsel for Mr. Kinney (Apr. 6, 2018).)[11] Consequently, the value of the January Award was $248.96, which is greater than the $205 purported settlement offer.

Failure to account for the $205 credit in determining whether the January Award exceeded $205 was an evident material miscalculation of figures, and the March Award should be modified accordingly. *See, e.g., Kappel v. Advanced Equities, Inc.*, No. 08 C 1991, 2008 WL 4865662, at *2 (N.D. Ill. June 18, 2008) (modifying award after finding arbitrators made a material miscalculation in failing to account for warrant strike price when awarding full per share value of stock).

---

[11]     A copy of this letter is attached hereto as Exhibit I.

## IV.     RELIEF

Whether the March Award is vacated or modified, this Court should order AT&T to pay Mr. Kinney the Alternative Payment and Attorney Premium. Under 9 U.S.C. § 10(b), this Court can "either 'direct a rehearing by the arbitrator[]' or decide the question that was originally referred to [him]." *Stolt-Nielsen*, 559 U.S. at 677 (quoting 9 U.S.C. § 10(b)). When "there can be only one possible outcome," however, there is "no need to direct a rehearing by the arbitrator[]." *Id*. Here, there is only one possible outcome, so ordering a new arbitration is unnecessary. It is clear—notwithstanding AT&T's fraudulent misrepresentations to the contrary—that the $205 credit was not a settlement offer under Illinois law, and that even if it were, it did not exceed Mr. Kinney's $248.96 recovery. Mr. Kinney is entitled to the Alternative Payment and Attorney Premium.

## CONCLUSION

Benjamin Kinney respectfully requests that this Court enter an order (i) vacating—or in the alternative, modifying—the March Award, (ii) ordering AT&T to pay the Alternative Payment and Attorney Premium, and (iii) granting such further relief as it deems just and proper.

Respectfully submitted,

**BENJAMIN KINNEY**,

Dated: April 25, 2018

By:＿＿＿＿/s/ Ari J. Scharg＿＿＿＿＿
　　　　　One of his attorneys

Ari J. Scharg
ascharg@edelson.com
Albert J. Plawinski
aplawinski@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378